Filed 5/12/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re P.R., a Person Coming Under the Juvenile Court Law. | C077293 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>Ashley M.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 13JVSQ2966501) |

APPEAL from the orders of the Superior Court of Shasta County, Molly A. Bigelow, Judge.  Dismissed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rubin E. Cruse, Jr., County Counsel, and David M. Yorton, Jr., Deputy County Counsel, for Plaintiff and Respondent.

Ashley M., mother of the minor, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother's sole

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

contention is that substantial evidence does not support the juvenile court's finding that there was good cause to deviate from the adoption placement preferences of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) As we will explain, because mother lacks standing to challenge the placement order, we will dismiss the appeal.

**FACTS**

The two-year-old minor, P.R., was detained in March 2013 due to mother's neglect as a result of serious substance abuse and father's absence. At the detention hearing both parents claimed Indian heritage. Mother's Judicial Council form ICWA-020 claimed Indian ancestry in the Creek, Cherokee and Sioux tribes. Shasta County Health and Human Services Agency (the Agency) sent notice of the proceedings to all relevant tribes.

The disposition report recommended services for the parents and indicated the minor might be eligible for membership in the Muscogee Creek Nation (the tribe). Pending the jurisdiction/disposition hearing, the minor was placed in a concurrent foster home. The maternal great-grandmother was approved for placement but did not feel she was able to care for the minor. Cooper G., a paternal uncle living in Alaska, contacted the social worker seeking placement. The social worker planned to conduct a telephonic interview and submit the required Interstate Compact on the Placement of Children (ICPC) documents to initiate a relative home study. At the jurisdiction/disposition hearing held in June 2013, the court sustained the petition, ordered services for the parents and suspended mother's visitation with the minor, finding visitation would be detrimental.

The six month status review report filed in December 2013 recommended termination of reunification services because neither parent had made any progress in his or her case plan. The paternal uncle's ICPC was being processed and results were

expected in January 2014.[2] The social worker had spoken with the tribe's representative in July 2013 and learned the tribe would enroll the minor but would not intervene in the case. The report stated the minor's current placement was not within the ICWA placement preferences, because no ICWA compliant home was available when the minor was placed. Both the social worker and the current caretakers had made ongoing efforts to ensure that the minor had some connection to the tribe's heritage and cultural practices.

An addendum report in late December 2013 stated that Dorothy R. contacted the social worker to apply for placement. Dorothy R. lived in Minnesota and the minor's biological paternal grandfather was her stepfather. The social worker secured the necessary information for an ICPC request.

At the six-month review hearing held in January 2014, the tribe's representative appeared telephonically and confirmed the tribe would not intervene. The court adopted the recommended findings and orders terminating the parents' services and setting a section 366.26 hearing.

The May 2014 assessment for the section 366.26 hearing recommended termination of parental rights and a permanent plan of adoption. Neither parent had contacted the minor in the last year; only the maternal great-grandmother (who would not adopt the minor) continued to have contact with her.

The assessment reiterated that the tribe would not intervene. The social worker had written to the tribe in April 2014 asking for its opinion on the permanent plan of adoption and its placement preference between Dorothy R. and the current caretaker but

---

[2] The results of the paternal uncle's ICPC are not in the record presented to us on appeal, and we denied the Agency's motion to take additional evidence on this topic and others. The tribe, although apparently receiving the Agency's reports throughout the case, seemed unaware of the uncle's ICPC. We presume the Agency will consider *all* ICPCs and relevant reports prior to the final adoption placement decision.

had not yet received a response. The social worker discussed the need to preserve the minor's heritage with the current caretakers, who engaged in various age-appropriate activities with the minor to teach her about her Indian heritage. The social worker had also obtained the necessary documents and orders to complete the minor's enrollment in the tribe. The assessment stated that: "Should [the minor's] current proposed permanent family be unable to adopt her due to an unforeseen reason[,] there are available homes with approved adoption home studies that are interested in children with her characteristics. A preliminary search for available Native American families produced more than 25 potential matches."

Dorothy R.'s ICPC was delayed while she obtained suitable housing; it was not clear that she was interested in adoption or whether she would even pass a home study. If her ICPC were approved, the social worker would need to reassess which placement was in the minor's best interests. The assessment concluded that the minor was likely to be adopted and that the current caretakers wanted to adopt her.

The May 2014 section 366.26 hearing was continued until July 2014 (at the tribe's request) to secure the results of Dorothy R.'s ICPC.[3] Neither parent was present in court in July, and the court clerk was unable to contact the tribe telephonically. Counsel for the Agency had recent contact with the tribe and informed the court that, while the tribe still declined to intervene, information about the case was provided to it. Counsel presented a stipulation by the parties to receive the Indian expert's evidence by declaration rather than testimony.

---

[3] The results of Dorothy R.'s ICPC were not presented at the continued hearing in July, and are not in the record presented to us on appeal. We denied the Agency's motion to take additional evidence on this topic and others. Again, we presume the Agency will consider *all* ICPCs and relevant reports prior to the final adoption placement decision.

The expert's declaration stated that the tribe had asked that Dorothy R.'s ICPC be completed prior to adoption by the current caretaker. The expert recommended continued contact between the maternal great-grandmother and the minor and that the minor be referred to Redding Rancheria Tribal Health to access culturally sensitive healthcare services and local Native American cultural events and activities.

After considering the evidence, the juvenile court adopted the recommended findings and orders terminating parental rights and selecting a permanent plan of adoption. In so doing, the court found, as relevant here: (1) the ICWA applied; (2) the Agency had adhered to ICWA placement preferences when placing the child; (3) the minor was not placed within the ICWA preferences because there were no available homes within the preferences; (4) the Agency had consulted with the tribe; and (5) the tribal representative concurred with the placement. The court granted the current caretakers de facto parent status and subsequently granted their request to be designated prospective adoptive parents. Mother appealed from the court's orders.

## DISCUSSION

Mother's arguments on appeal challenge the juvenile court's finding that there was good cause to deviate from the ICWA adoption placement preferences. Mother claims the court's placement decision was not supported by substantial evidence. However, she does *not* argue that her parental rights were improvidently terminated. Because her parental rights have been terminated, and she makes no argument as to how alleged placement errors might be related to the termination decision, she lacks standing to challenge matters related to the minor's placement. Her appeal must be dismissed.

"A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependant child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.* (2011) 52 Cal.4th 231, 238.) Here, mother did not contest the termination of her parental

5

rights in the juvenile court.[4]  Nor does she claim that reversal of the placement order could advance an argument against terminating parental rights.  Consequently, although mother has standing to raise other issues relating to the ICWA (such as notice and inquiry) where the ICWA issues could impact the order terminating parental rights, on the issue tendered she lacks standing to appeal.

Not every party has standing to appeal every appealable order.  (*In re K.C.*, *supra*, 52 Cal.4th at p. 236.)  The minor and the tribe retain standing to challenge the juvenile court's order placing the minor under the ICWA and neither has appealed.  In any event, the ultimate adoption placement decision has not yet been made.  When contacted prior to the termination hearing, the tribe was concerned only that Dorothy R.'s ICPC study be reviewed prior to finalizing the decision to permit the minor's adoption by her current caretakers.  The Agency report for the section 366.26 hearing contemplated reviewing all pending ICPC reports prior to finalizing adoptive placement.  The tribe and the minor will have the opportunity to assert the ICWA adoption placement preferences at that time if necessary.

## DISPOSITION

The appeal is dismissed.

          DUARTE          , J.

We concur:

          RAYE          , P. J.

          HOCH          , J.

---

[4] Nor do we see how she could.  The facts of the case could not support the beneficial parental relationship exception, there were no siblings, and there was no evidence that termination of mother's parental rights would substantially interfere with the minor's connection to the tribe.  (§ 366.26, subd. (c)(1)(B)(i), (v) & (vi)(I).)

6