Filed 9/28/21  In re A.P. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.P., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.C., <br><br> Defendant and Appellant. | A161645 <br><br> (Sonoma County <br> Super. Ct. No. 5981DEP) |

A.C., the mother of three-and-a-half-year-old A.P., appeals the order terminating her parental rights.  She contends that a limited reversal should be ordered due to the juvenile court's failure to properly discharge its duty of inquiry concerning her daughter's Indian heritage through the lineage of A.P.'s presumed father.  We reject her contentions and affirm the judgment.

**BACKGROUND**

**A. Overview**

These proceedings were initiated on August 23, 2019, when the Sonoma County Human Services Agency (the agency) filed a petition under Welfare

1

and Institutions Code section 300[1] on behalf of A.P., who was then 14 months old, and her older sister, based on allegations of domestic violence between mother and her live-in boyfriend, S.P., and allegations concerning mother's serious medical issues that left her unable to safely care for her children. A.P.'s sister turned 18 during the course of these proceedings below, and her case is not at issue here.

Subsequently, at the jurisdiction/disposition hearing held on January 9, 2020, the court found that S.P. is A.P.'s presumed father, and that mother's estranged husband, Paul C., who was living in Oregon, is S.P.'s "legal" father.

Mother's reunification services were terminated after six months at a contested review hearing held on August 4, 2020, and the court terminated her parental rights after a contested hearing held on December 11, 2020.

This timely appeal followed.

## B.    Relevant Facts

The issues in this appeal solely concern the Indian ancestry of A.P.'s presumed father, S.P., who disclosed to the emergency response social worker on the day A.P. was taken into emergency temporary custody (August 20, 2019) that he has Native American ancestry with the Pomo Indians.[2]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] At the time, he also disclosed heritage with the Mishewal Wappo band of Indians. The agency twice tried to contact their Indian Child Welfare Act (ICWA) representative but could not reach anyone and determined they are not a federally recognized tribe; mother concedes that fact and they are not at issue here.

Later, on August 5, 2019, mother disclosed she may have "Piute" ancestry. Mother concedes this was a misspelling of "Paiute" Indians, and raises no issue as to the Paiute tribes, which were given notice of these proceedings and responded that A.C. is not a member or eligible for Paiute membership.

The agency immediately began to investigate his claim of Indian ancestry. Three days after S.P.'s disclosure, and on the same day the dependency petition was filed, the agency contacted the Hopland Band of Pomo Indians who stated S.P. is not on their registry. Then, at the detention hearing held a few days later, the parents were not present and so the juvenile court ordered the agency to do an ICWA inquiry when "we get ahold of the parents," adding that "we'll continue to do [that] with anybody involved in the case."

Shortly thereafter, on September 12, 2019, the agency interviewed S.P. further about his Indian ancestry and completed a family tree with him. S.P. disclosed that his mother and brother "may have been" registered with the Manchester Point Arena Bands of Pomo Indians, but that he was unsure because he had been raised by a different family (in what he described as an "informal adoption"). Then, the same day, the social worker called and spoke with the ICWA representative for the Manchester Point Arena Band of Pomo Indians (an individual named Liz DeRouen). They went over the family tree together and determined that both S.P. and A.P are eligible for enrollment in the tribe.

On September 16, 2019, the agency obtained a continuance of the jurisdiction hearing due to new disclosures of abuse and developments concerning mother's mental health (who had been taken by local police to the hospital for a section 5150 hold due to erratic behavior). The continuance request also cited the fact that the social worker had "determine[d] with the assistance of ICWA representative Liz DeRouen that [A.P.] is indeed eligible for enrollment in the Manchester Point Arena Band of Pomo Indians and the Indian Child Welfare Act will be applicable."

A few weeks later, on October 9, 2019, the agency filed its report for the upcoming combined jurisdiction/disposition hearing recounting the foregoing efforts to date. It asserted that on the basis of the information it had received, "[a]t this time, the Indian Child Welfare Act does not apply. However, there is reason to believe that the child, [A.P.] is eligible for enrollment in the Manchester Point Arena Tribe of Pomo Indians through her father, [S.P.]'s lineage. Neither [A.P.] or her father are currently enrolled members of the tribe, but both are eligible for enrollment." It thus concluded that "[i]t . . . appears that the Indian Child Welfare Act does not apply . . . , however, were her father to enroll himself in the Manchester Point Arena Band of Pomo Indians, the Indian Child Welfare Act would apply from that point." The jurisdiction hearing was continued multiple times after that.

In the meantime, on October 10, S.P. filed a parental notification of Indian Status, indicating he is or may be a member of the "Pomo Manchester Tribe."

Then on December 12, 2019, the agency mailed ICWA notice of these proceedings, and the upcoming jurisdiction hearing, to numerous tribal representatives including to Liz De Rouen, the ICWA representative for the Manchester Point Arena Band of Pomo Indians in Point Arena, California with whom the social worker already had been in touch, as well as to the Sacramento office of the Bureau of Indian Affairs and to the U.S. Secretary of the Interior.

At the combined jurisdiction/disposition hearing held on January 9, 2020, the agency's counsel informed the juvenile court that even though neither S.P. nor A.P. were members or enrolled with the Manchester Point Arena band of the Pomo Tribe, the agency was "working with the tribe anyway because they're there to work with and that's good." The juvenile

4

court observed that ICWA did not apply at that juncture but would apply in the future if S.P. were to register with the tribe. The court concluded the hearing by observing that "[l]egal notice to the tribes has been prepared and will go out," and that ICWA's applicability would "remain an open question."[3]

In the six-month status review report filed on June 24, 2020, the agency stated that ICWA "does not apply," but also once again noted that "there is reason to believe that the child, [A.P.]. is eligible for enrollment in the Manchester Point Arena Tribe of Pomo Indians through her father, [S.P.]" It added that "[n]either [A.P.] nor [S.P.] are currently enrolled members of the tribe, but both are eligible for enrollment. [S.P.] has stated . . . that he does not plan to enroll, but has implied that he would enroll 'so ICWA would apply' if the Department did anything he did not agree with." Then at the six-month review hearing at which mother's reunification services were terminated, the juvenile court made a finding that ICWA "does not apply to this case."

The section 366.26 report, filed November 12, 2020, again said that ICWA does not apply "[a]t this time" but that A.P. and S.P. were eligible for enrollment in the Manchester Point Arena Tribe of Pomo Indians. At the subsequent section 366.26 hearing, which was combined with a disposition hearing on A.P.'s newborn baby brother (as to whom S.P.'s paternity was alleged but had not yet been established), the agency's counsel informed the court that "[t]here is no indication that either parent is an enrolled member of a tribe," following which the juvenile court made an oral ruling that ICWA does not apply in the brother's case. The parties did not address the subject

---

[3] It is unclear why the court said the notices "will" go out, because they already had been sent. That discrepancy is irrelevant to our analysis, however, and indeed mother has not mentioned it.

5

further and the court made no ICWA ruling specific to A.P. at that final hearing, where it terminated mother's parental rights.

## DISCUSSION

Section 224.2 governs the steps that the juvenile court and county welfare agency must take to discharge their "affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child" for purposes of ensuring compliance with ICWA in child dependency proceedings. (§ 224.2, subd. (a).)

At issue here is solely the duty of further inquiry under subdivision (e). That subsection states:

"(e) If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know[4] that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.

---

[4] A "reason to know" exists in any of six situations: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] [Or] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

6

"[e] (1) There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d).

"[e] (2) When there is reason to believe the child is an Indian child, further inquiry is necessary to help the court, social worker, or probation officer determine whether there is reason to know a child is an Indian child. Further inquiry includes, but is not limited to, all of the following:

"[e][2] (A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3.

"[e][2] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.

"[e][2] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.). Contact with a tribe shall

include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e).)

If, after a proper further inquiry has been made in compliance with section 224.2, and "there is no reason to know whether the child is an Indian child, [then] the court may make a finding that the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) does not apply to the proceedings, subject to reversal based on sufficiency of the evidence. The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3." (§ 224.2, subd. (i)(2).)

Here, the parties agree the agency at most had only a "reason to believe" A.P. is an Indian child (not a "reason to know" that, which triggers heightened duties). As best we understand her briefing, mother asserts three errors under section 224.2, subdivision (e) which we next address. Overarching them all is the contention that the agency's duty of inquiry did not end once it determined that A.P. was eligible to enroll in the Manchester Point Arena Band of the Pomo Indians. Rather, she contends, this information itself "triggered the affirmative duty . . . to make further inquiry."

Our review here is deferential. " 'We review a court's ICWA findings for substantial evidence. [Citations.] "We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' [Citation.] The appellant ' "has the burden to show that the evidence was not sufficient to

8

support the findings and orders." ' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 688.)

First, mother contends the agency's inquiry was deficient because it never contacted or attempted to contact S.P.'s brother or mother, whom S.P. reported might have been registered tribe members although he was unsure. She asserts that such contact "could determine the family's involvement with the Manchester Point Arena Tribe of the Pomo Indians, the family's Indian culture, the process of enrollment, or whether an enrollment application was ever provided to father or for [A.P.]." Mother cites no authority, however, that the inquiry provisions of section 224.2 are concerned with any of these subjects. Moreover, the most reliable and definitive source of information about the tribe's enrollment procedures (and, indeed, whether S.P. procured an enrollment application) was the tribe itself, not estranged biological relatives who might or might not have been enrolled members themselves; and here, the record affirmatively shows that the agency was in touch with the tribe's ICWA representative, remained in touch with her during the case, and learned all it needed to know from *her*: namely, that A.P. and her father *were* eligible to enroll. The agency "reasonably could conclude . . . that no further inquiry was needed because there was no further information of value to obtain from" either S.P's mother or brother. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [holding substantial evidence supports finding agency complied with its duty of inquiry despite its failure to contact great-grandmother].) It was "not required to 'cast about' for information or pursue unproductive investigative leads." (*Ibid.*)

Next, mother asserts that the agency did not have any contact with father in the last nine months of the case, and thus failed to ascertain whether he intended to enroll in the tribe or whether he or mother herself

9

intended to enroll A.P. in the tribe. Once again, however, she cites no authority that such an inquiry was required. Moreover, had mother herself intended to try to enroll A.P. in the tribe she could have—and should have—made a record of that fact herself for the juvenile court. She did not do so. Indulging all presumptions in favor of the judgment as we must, we presume mother harbored no such intentions.

Finally, mother asserts that the agency gave ICWA notice to the tribe "without first having informal contact with the tribe to 'share information identified by the tribe as necessary for the tribe to make a membership or eligibility determination' " as required by section 224.2. In this regard, she contends that written notice was "clearly incorrect" because the tribal information for S.P. was described as "no information available." This contention borders on frivolous. The agency's informal discussions with the tribe's ICWA representative were sufficient *for the tribe* to ascertain that both father and child were eligible for tribal membership; mother's puzzling assertion to the contrary is belied by this record.

As for the ICWA notices the agency sent, mother's own cited authority demonstrates it is unnecessary to address whether they might have lacked necessary information. As mother acknowledges in her briefing, notice is not legally required when, as here, there is only a reason to believe a minor may be an Indian child, not a reason to know that. (See *In re Dominic F.* (2020) 55 Cal.App.5th 558, 570-572 [not reaching adequacy of ICWA notices in such circumstances]; see also *In re D.S., supra,* 46 Cal.App.5th at p. 1054 [formal ICWA notice "was not yet triggered under section 224.3" where agency had only reason to believe, not reason to know, an Indian child may be involved]; *In re S.R.* (2021) 64 Cal.App.5th 303, 313 [ICWA notice is required under federal and state law ' "where the court *knows or has reason to know* that an

10

Indian child is involved' "].)  Furthermore, even if the notices had been legally required, they did apprise the tribes of S.P.'s Pomo heritage:  they listed the current address and date of birth of S.P.'s mother and identified that she was affiliated with the Manchester Point Arena Band of Pomo Indians.  As we have noted, the information the agency gathered from father was sufficient *for the tribe* to determine that both the child and her father are eligible to enroll in the tribe.  Nothing more was required in giving notice.  (See *In re J.S.*, *supra*, 62 Cal.App.5th at p. 688 ["Notice to a tribe 'must include enough information for the tribe to "conduct a meaningful review of its records to determine the child's eligibility for membership" ' "].)  Mother cites no case standing for the illogical proposition that such an inquiry, sufficient for the tribe itself, is nevertheless deficient under section 224.2 for purposes of ensuring compliance with the court's duty to ascertain whether the minor is an Indian child.

In sum, the juvenile court's implied findings that the agency conducted an adequate inquiry under section 224.2 is supported by substantial evidence.

Finally, we address one remaining point.  Mother's opening brief also challenges the juvenile court's description of her estranged husband as A.P.'s "legal" father in various orders.  She asserts that we must review the issue and clarify that S.P. is A.P.'s presumed and biological father, "[i]n order to correct the record and preserve [A.P.]'s paternal lineage for purposes of ICWA."

We decline to review this issue because mother lacks standing to raise it.  She has not shown that any of her rights (as opposed to those of A.P.) are even conceivably affected by the court's ruling.  "Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person

aggrieved by a decision may appeal." (*In re K.C.* (2011) 52 Cal.4th 231, 236 [holding father whose parental rights were terminated lacked standing to appeal order denying petition to change child's placement].) In her reply brief, mother cites law concerning a mother's standing to initiate and/or to participate in a paternity action (see Fam. Code §§ 7630, subds. (a), (b); *Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850, 864), but that authority is inapposite. The question here is whether her interest in avoiding the termination of her parental rights is in any way potentially affected by the court's description of Paul C. as a "legal" parent. (See *K.C.*, at p. 238 ["A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child[] . . . only if the . . . order's reversal advances the parent's argument against terminating parental rights"].) Mother makes no argument that reversing the court's ruling concerning Paul C.'s "legal" father status could possibly lead the juvenile court *not* to terminate her parental rights, and therefore she has shown no "legally cognizable interest" in that paternity determination. (See *K.C.*, at p. 237; see also, e.g., *In re P.R.* (2015) 236 Cal.App.4th 936, 940 [on appeal from order terminating parental rights, mother lacks standing to contend that juvenile court erroneously deviated from ICWA adoption placement preference, because "she makes no argument as to how [the] alleged . . . errors might be related to the termination [of parental rights] decision"].)

Moreover, even if mother had standing to raise this issue, we agree with the agency that any error was harmless. The juvenile court designated S.P. as A.P.'s presumed father and terminated his parental rights, and the only claim of Indian heritage at issue below and at issue on appeal concerns S.P.'s Indian ancestry. There is no argument that Paul C. had potential

12

Indian ancestry that should have been, but was not, adequately explored or considered. Thus, any error by the juvenile court in referring to Paul C. as A.P.'s "legal" father is entirely harmless insofar as the juvenile court's compliance with ICWA is concerned.

## DISPOSITION

The judgment is affirmed.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

MILLER, J.

*In re A.P.* (A161645)

14