Filed 9/24/25  In re R.O. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| In re R.O., a Person Coming Under the Juvenile Court Law. | C102665 |
| AMADOR COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.O.,<br><br>    Defendant and Appellant. | (Super. Ct. No. 23DP00903) |

Appellant A.O., father of minor R.O., appeals from the juvenile court's orders denying his petition for modification and terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 388, 395.)[1]  Father contends that the juvenile court abused its discretion

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

when it denied his section 388 petition to modify the court's previous order terminating his reunification services. He also claims that his trial counsel rendered ineffective assistance at the setting hearing and the section 366.26 hearing by failing to assure that minor's placement comported with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and by not invoking other statutory provisions governing termination of parental rights in cases, like here, where the minor is an Indian child. We reject these contentions and affirm the juvenile court's orders.

BACKGROUND

On July 21, 2023, newborn minor R.O. was detained pursuant to a protective custody order after her parents failed to seek medical treatment when she was fed too much formula and suffered respiratory arrest. Minor was placed with her maternal step-grandmother, J.P. (maternal step-grandmother). Maternal step-grandmother was previously married to the maternal grandfather and is not biologically related to minor. The Amador County Department of Social Services (Department) filed a dependency petition alleging that minor suffered or was at substantial risk of suffering serious physical harm due to, among other things, parents' failure to seek medical attention for minor, substance abuse, and unsanitary and hazardous living conditions. (§ 300, subd. (b).) The petition was subsequently amended to include additional allegations regarding father's continued substance abuse during the dependency proceedings.

The detention report stated that minor may have Native American heritage through her paternal grandmother, L.K. (paternal grandmother), who was a registered member of the Cherokee Nation. Parents, paternal grandmother, maternal step-grandmother, and maternal great-step-grandmother were present at the July 2023 detention hearing. Maternal step-grandmother and maternal great-step-grandmother denied any Native American ancestry. Father claimed possible Cherokee ancestry. The juvenile court found there was reason to believe minor was an Indian child and ordered the Department to conduct further inquiry pursuant to ICWA. The court ordered minor detained and placed

2

in the home of an approved relative, confirming she was currently in the care of maternal step-grandmother. The court ordered that parents be provided with alcohol and drug testing, substance abuse treatment, parenting education, mental health assessments, and anger management services. Father and minor's mother (mother) were permitted supervised visits with minor.

According to the September 2023 disposition report, father tested positive for methamphetamine twice in August 2023 and once in September 2023. Since July 2023, he had attended fewer than half of his scheduled visits with minor. The Department noted concerns with both parents' lack of engagement in their services. Father was in the process of enrolling as a registered member of the Cherokee Nation and expressed his desire that minor learn about his heritage. He requested that minor be returned to him and mother or placed with paternal grandmother, whom he described as minor's "blood grandmother."

Minor was reportedly doing well in the care of maternal step-grandmother. Maternal step-grandmother was meeting minor's medical, developmental, and emotional needs. According to the Department's report, paternal grandmother was undergoing resource family approval "for possible placement in the future, should one be needed." The Department recommended that the juvenile court continue minor in her placement with maternal step-grandmother.

On September 28, 2023, the juvenile court sustained the Department's petition as amended and adopted the Department's recommended findings and orders. Mother requested a contested disposition hearing. Father informed the court that he was not contesting disposition because he would be incarcerated for 60 days beginning October 18, 2023, and would not be available to care for minor.

At the October 12, 2023 disposition hearing, the juvenile court ordered minor removed from both parents and placed in the home of an approved relative, noting that

minor's current placement with maternal step-grandmother was appropriate. The court ordered reunification services for both parents and entered visitation orders.

In December 2023, paternal grandmother completed the resource family approval process.

In a January 2, 2024 letter to the Department, the Cherokee Nation stated that it had determined that minor was an Indian child. In a subsequent phone call with the Department, a representative of the tribe informed the Department that "most likely [the] Cherokee Nation would not file a motion to be involved this late in the case." The representative also stated that father was officially enrolled. The Department "emailed the investigate narrative and petitions after speaking with" the representative.

In its March 2024 status review report, the Department recommended that the juvenile court terminate parents' reunification services and set the matter for a section 366.26 hearing. Father had not engaged in his case plan services and had repeatedly tested positive for methamphetamine between August 21, 2023 and January 30, 2024. He had not attended any of minor's doctor's appointments and had participated in only 30 percent of scheduled visits with minor.

In April 2024, paternal grandmother and maternal step-grandmother both submitted caregiver information forms. Paternal grandmother emphasized that she was a "blood family" member and a citizen of the Cherokee Nation, as was father, and requested that minor not be adopted by anyone outside the paternal family. Maternal step-grandmother asked the court to allow her to continue raising minor, as she had been minor's primary caregiver since birth and had played a significant role in her life. Maternal step-grandmother emphasized the deep bond she and minor shared and her commitment to minor even though she was not minor's biological grandmother.

At the April 25, 2024 six-month review hearing, father asked the juvenile court to place minor with paternal grandmother. The court found that minor was an Indian child and that her current placement with maternal step-grandmother was appropriate. The

4

court terminated parents' reunification services and set the matter for a section 366.26 hearing.

In July 2024, the Department requested a placement hearing to address paternal grandmother's caregiver information form and settle the issue of placement consistent with ICWA. Maternal step-grandmother filed a second caregiver information form with reference letters attached, including a letter from a liaison with the Foothill Indian Education Alliance, Inc. who was also a member of the Ione Band of Miwok Indians. The liaison noted maternal step-grandmother's background working for a federally recognized tribe in the county and her "vast understanding of the native culture." The liaison attested to maternal step-grandmother's efforts to identify tribal services, activities, and cultural events available to minor. Maternal step-grandmother also attached her own letter stating that, since learning that minor had Cherokee heritage, she had made efforts to ensure that minor was "connected with her Native culture," including by seeking information from local tribes on cultural events and participating in native ceremonies with minor. Maternal step-grandmother added: "It is important to me that [minor] has the opportunity to embrace and celebrate her roots. By connecting [minor] to her Native culture, I hope to provide her with a sense of identity and belonging, as well as a deeper connection to her heritage."

The Department's placement review report recommended that the juvenile court continue minor in her placement with maternal step-grandmother, observing that minor had been with maternal step-grandmother since she was 10 days old and had a secure, bonded attachment to her. The Department noted the Cherokee Nation's confirmation that minor was an Indian child and reiterated the information it had learned in its January 2024 phone call with a tribal representative—that the tribe most likely would not intervene. The report stated that maternal step-grandmother was employed by the Ione Band of Miwok Indians, lived on tribal land, and attended Native American events in the

community, including one with minor. Maternal step-grandmother expressed that she would ensure that minor continue to grow up around Native American traditions.

The report further stated that then one-year-old minor had a secure emotional bond with maternal step-grandmother, as evidenced by the fact that minor cried when maternal step-grandmother put her down and then calmed when maternal step-grandmother picked her up again. Minor sought out maternal step-grandmother for comfort, attention, and affection. Minor was stable and thriving in her placement, and the Department was concerned that she might experience some grief if she were moved to a new placement. The Department sent a placement decision notice to paternal grandmother, noting that a change in placement was "not needed at this time" but adding that, if minor's current placement became unstable, the Department would consider placement with paternal grandmother.

The Department's July 2024 section 366.26 report recommended that the juvenile court terminate parental rights and order a permanent plan of adoption. The report noted that a placement change for minor was not needed. It further stated that the Department was awaiting the court's placement determination "that is in the best interest of the minor and consistent with the placement preferences set forth under the Indian Child Welfare Act." Father reportedly had not visited minor since January 2024. He was incarcerated for some period during which visitation was deemed not in minor's best interest. Following his release from jail, a visit was coordinated, but it was subsequently canceled due to father's failure to confirm 24 hours in advance.

Both parents were present at the October 2, 2024 contested placement hearing and uncontested section 366.26 hearing, as were maternal step-grandmother and paternal grandmother. Father requested an ICWA expert to provide a report on the issue of placement. The Department objected, arguing that an ICWA expert was only required at section 366.26 hearings to make specific recommendations as to termination of parental

6

rights and assess what permanent plan was in the minor's best interest. The juvenile court continued the hearings.

At the continued contested placement hearing on November 14, 2024, the juvenile court denied father's request to continue the hearing again to obtain an ICWA expert. Paternal grandmother testified that she was minor's blood relative, but because she was out of town when minor was removed from parents' care, minor was placed with maternal step-grandmother. When paternal grandmother learned that minor would remain with maternal step-grandmother for an extended period, paternal grandmother contacted the Department to find out what she needed to do to secure placement of minor. She was instructed to complete the resource family approval process. She testified that she had been a registered member of the Cherokee Nation in Oklahoma since 2019, maintained contact with several members of the tribe, received a monthly newsletter, and listened to monthly podcasts put on by the tribe. When she informed the tribe that she wanted placement of minor, she was told father would have to obtain his enrollment card, which he later did. She testified that she had different artifacts in her house to share with minor and wanted to make sure minor knew about her Native American heritage. When asked whether she participated in any Cherokee tribal events, she said she had attended one event on-line but would like to attend events in person in Oklahoma.

Mother testified that maternal step-grandmother lived on a Miwok tribal reservation. Other of mother's relatives lived near maternal step-grandmother and interacted with her and minor on a weekly basis, and they all participated in tribal customs. Minor attended tribal activities as well. Maternal step-grandmother volunteered for the Indian education parent committee and celebrated holidays with the Ione Miwok Indian Tribe.

The juvenile court found that minor's placement with maternal step-grandmother satisfied ICWA's placement preference. Given the Cherokee Nation's election not to intervene or request deviation from the statutory placement preference and in the absence

7

of any showing that minor needed to be moved from maternal step-grandmother's custody, the court denied paternal grandmother's request for a change of placement. The court scheduled a selection and implementation hearing for December 12, 2024.

On December 2, 2024, father filed a section 388 petition asking the juvenile court to reinstate his reunification services. Father argued that his circumstances had changed in that he was released from jail, had entered a substance abuse treatment program in July 2024, attended AA programs, and participated in regular visits with minor. He argued that the requested change would be in minor's best interest because he was incarcerated when the case began but had participated in substance abuse treatment once he was released and visited her on a regular basis. He argued that minor "deserve[d] to reunify with him based on his recent actions." The court ordered a hearing on the request.

On December 12, 2024, the Department filed an ICWA expert report. The expert concluded that active efforts were made to provide services and programs designed to prevent the breakup of minor's Indian family and that the Department was diligent in finding appropriate placements for her. The report further observed that minor was doing well in her current placement with "a close relative" (maternal step-grandmother) to whom she was bonded, and maternal step-grandmother was doing everything possible to provide minor with opportunities to learn about her culture. Maternal step-grandmother "is also supportive of the child's connection with her Tribe and getting enrolled in the Cherokee Nation. The maternal grandmother is very connected with the Miwok Tribe and culture and even though it is not Cherokee, she will ensure that [minor] learns about the Cherokee culture and that she will have the opportunity to participate in collective Intertribal activities because of her connection with the Miwok Tribe and culture." The report concluded that "the current ICWA preferred relative placement is the most appropriate and least restrictive setting at this time taking into consideration the needs of the child."

At the December 12, 2024 hearing, the juvenile court heard father's testimony in support of his section 388 petition. The court commended father for showing so much improvement in such a short amount of time but found that he had not met his burden under section 388 and denied the petition.

The juvenile court then proceeded to the uncontested section 366.26 hearing. The Department, mother, and minor submitted on the Department's July 30, 2024 report and the ICWA expert report. Father's counsel told the court, "I have no further evidence to present," and submitted. The court terminated parental rights, ordering adoption as the permanent plan. The court found "by clear and convincing evidence it[ was] likely that the child w[ould] be adopted. The child is an Indian child. The Court heard and considered relevant evidence including the qualified expert declaration that was submitted and evidence regarding the prevailing social and cultural practices of the child's tribe. The Court did find, beyond a reasonable doubt, the continued physical custody in the home of the mother and father [wa]s likely to result in serious, emotional or physical harm."

DISCUSSION

I.

Father contends that the juvenile court abused its discretion in denying his section 388 petition. He argues that his life circumstances significantly changed after his reunification services were terminated and that reunification was in minor's best interest because minor and father have shared Cherokee heritage. We discern no abuse of discretion in the juvenile court's decision.

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) To petition under section 388 to change a juvenile court order, a party must allege facts showing "[a]ny change of circumstance or

9

new evidence that may require changing the order; and . . . [¶] . . . [t]hat the best interests of the child may be promoted by the proposed change of order." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) The party petitioning for modification has the burden of proving by a preponderance of the evidence both changed circumstances or new evidence and that the requested order would serve the minor's best interests. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) A modification "petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

With respect to changed circumstances, father's petition alleged that, after he was released from jail, he entered substance abuse treatment, attended AA programs, and participated in regular visits with minor. The record shows, however, that, between July 2023 when services were initially ordered and his most recent release from custody in July 2024, he had not engaged in any of his case plan services, repeatedly tested positive for methamphetamine (between August 2023 and January 2024), and attended fewer than 50 percent of visits with minor, having had no visits since January 2024. As father acknowledges on appeal, he participated in services between August 2024 and December 2024 and, as of the date of the section 366.26 hearing, had been sober for four months and was still participating in substance abuse treatment. The juvenile court denied father's petition finding that he had not carried his burden to allow a change in the court's order. Because father showed changing, but not adequately changed, circumstances, this was not an abuse of discretion. (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [affirming denial of § 388 petition when the parents' efforts at drug rehabilitation were only three months old at time of § 366.26 hearing].) And because we conclude that there was no error with respect to the first element of section 388, we need not reach father's argument as to the second.

10

## II.

Father also contends that his trial counsel rendered ineffective assistance of counsel by failing to press the application of various provisions of the dependency statutes that apply when, like here, the minor is an Indian child.  He maintains that these omissions were prejudicial and require reversal of the order terminating parental rights.

To establish ineffective assistance of counsel in dependency proceedings, a parent must show both that his or her attorney's representation was deficient and that the deficiency resulted in prejudice.  (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98; *In re Darlice C.* (2003) 105 Cal.App.4th 459, 463 [parent whose parental rights have been terminated "has a right to seek review of claims of incompetent assistance of counsel"].)  The " ' "parent must demonstrate that it is 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' "  (*In re N.S.* (2020) 55 Cal.App.5th 816, 843.)

Father first claims that his attorney performed deficiently by failing to argue that the juvenile court's order placing minor with maternal step-grandmother did not comport with ICWA's placement preferences.  Section 361.31, subdivision (b)(1) provides that, for an Indian child, preference "shall be given to the child's placement with one of the following, in descending priority order:  [¶]  (1) A member of the child's extended family, as defined in subdivision (c) of Section 224.1 and Section 1903 of the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.)."  (See also 25 U.S.C. § 1915(b).)  Both section 224.1 and section 1903 of title 25 of the United States Code state that " 'extended family member' " is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached" the age of 18 "and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)  A "party seeking departure from the [statutory] placement preferences shall bear the burden of proving by clear and

convincing evidence that there is good cause to depart from the placement preferences." (§ 361.31, subd. (i).)

As noted above, when minor was initially removed from her parents' care, she was placed with maternal step-grandmother. At the six-month review in April 2024, the juvenile court maintained minor in that placement and terminated father's reunification services. At the contested placement hearing held in November 2024, the juvenile court found that minor's placement with maternal step-grandmother satisfied the ICWA placement preference and, in light of the Cherokee Nation's decision not to intervene or request deviation from the statutory placement preference, and in the absence of any showing that minor needed to be moved, denied paternal grandmother's request for change of placement.

Father asserts that maternal step-grandmother did not meet the definition of an "extended family member" under section 1903(2) of title 25 of the United States Code and his trial counsel therefore performed deficiently in not raising this issue before the hearing terminating services and setting the section 366.26 hearing. We assume without deciding that father is correct. At the hearing, father's counsel argued that placement with a step-grandparent who did not have Native American heritage was not within the intent of ICWA, but he appeared to concede that maternal step-grandmother was a qualifying relative. As father notes on appeal, however, the definition of "extended family member" set forth in section 1903(2) of title 25 of the United States Code and section 224.1, subdivision (c)(1) includes an Indian child's "grandparent" and "stepparent," but it does not include "step-grandparent." (See *In re H.B.* (2023) 92 Cal.App.5th 711, 719 [step-grandmother not "extended family member" under § 224.1, subd. (c)].) And it is not our role to insert words into the statute that the Legislature did not intend. (*Perez v. Galt Joint Union Elementary Sch. Dist.* (2023) 96 Cal.App.5th 150, 167 [noting "rule of statutory construction that we do not add words to a statute"].)

12

But father has not demonstrated that any deficiency in failing to raise this issue prejudiced him. As noted above, this appeal concerns father's challenge to the termination of parental rights. In *In re P.R.* (2015) 236 Cal.App.4th 936, a parent appealed a juvenile court's termination orders, arguing that the court erred in finding good cause to deviate from ICWA's placement preferences. (*Id.* at p. 940.) We declined to consider the appeal because the parent failed to "claim that reversal of the placement order could advance an argument against terminating parental rights." (*Id.* at pp. 940-941; see also *id.* at p. 940, fn. 4.) Here, father appears to claim that his counsel's failure to object to maternal step-grandmother as a preferred placement affected the termination of his rights because it interfered with the applicability of section 366.25, subdivision (b)(1)(G) and section 366.26, subdivision (c)(1)(B)(vi), which, if followed, would have led to a result other than the termination of his rights. He likewise claims that his counsel provided ineffective assistance by failing to specifically invoke those statutes. We disagree with father's contentions.

Section 366.25, subdivision (b)(1)(G) provides that, "[w]henever a court orders that a hearing pursuant to Section 366.26 shall be held, it shall direct the agency supervising the child and the county adoption agency, or the State Department of Social Services when it is acting as an adoption agency, to prepare an assessment that shall include [¶] . . . [¶] [i]n the case of an Indian child, . . . an assessment of the likelihood that the child will be adopted, when, in consultation with the child's tribe, a tribal customary adoption, as defined in Section 366.24, is recommended." A " ' "tribal customary adoption" ' is an 'adoption by and through the tribal custom, traditions, or law of an Indian child's tribe,' which does not require termination of parental rights. (§ 366.24, subd. (a)(1).)" (*In re I.P.* (2014) 226 Cal.App.4th 1516, 1525.) In father's view, had the juvenile court ordered an assessment regarding a tribal customary adoption, the Department would have engaged in further communication with the Cherokee Nation, and such an adoption could have been considered. Father fails to establish, however, that

13

seeking such an assessment likely would have led to a different result with respect to the termination of his rights. Tribal customary adoption is "only an option when the child's tribe identifies it as an option" (*In re G.C., Jr.* (2013) 216 Cal.App.4th 1391, 1401), and the Cherokee Nation did not participate in this case after receiving notice of it.

A similar shortcoming applies with respect to father's citation to section 366.26, subdivision (c)(1)(B)(vi). That statute provides an exception to the termination of parental rights when the "child is an Indian child, and there is a compelling reason for determining that termination of parental rights would not be in the best interest of the child, including, but not limited to: [¶] Termination of parental rights would substantially interfere with the child's connection to their tribal community or the child's tribal membership rights." (§ 366.26, subd. (c)(1)(B)(vi)(I).) Father fails to show that, even had his counsel asked the juvenile court to apply this provision, there is a reasonable probability it would have done so. Father emphasizes that paternal grandmother was the appropriate placement for minor because she and minor share Cherokee heritage. But nothing in his arguments explains why severing *his* parental relationship with minor would have had an injurious effect on minor's connection to her tribal ancestry. Further, there was evidence in the record that maternal step-grandmother was committed to fostering minor's connection to her tribal community. In sum, father has not established that, absent any deficiencies in his counsel's representation, there is a reasonable probability that his parental rights would not have been terminated.

14

DISPOSITION

The juvenile court's orders are affirmed.

/s/

FEINBERG, J.

We concur:

/s/

RENNER, Acting P. J.

/s/

KRAUSE, J.